# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PHILLIP A. LUCKETT,         )
       Plaintiff,          )
                         )
      v.                   )       CAUSE NO.: 2:16-CV-223-PRC
                         )
NANCY A. BERRYHILL,        )
Acting Commissioner of the     )
Social Security Administration,   )
       Defendant.        )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Phillip A. Luckett on June 11, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on October 11, 2016. Plaintiff requests that the May 5, 2015 decision of the Administrative Law Judge denying in part his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On December 22, 2016, the Commissioner filed a response, and Plaintiff filed a reply on January 27, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff originally filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on March 8, 2007, alleging disability beginning November 5, 2005. The claims were denied initially and on reconsideration. On December 1, 2009, Administrative Law Judge (ALJ) Mona Ahmed issued an unfavorable decision. On February 24, 2011, the Appeals Council remanded for a new hearing. On October 5, 2011, ALJ Roxanne Kelsey issued another unfavorable decision. At Plaintiff's request, the ALJ reopened the case and issued an amended unfavorable decision on October 19, 2011. Plaintiff again requested Appeals Council review, which

was denied on February 17, 2012, making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed a civil action, and, on August 15, 2013, this Court reversed and remanded for a new hearing. Pursuant to that Court order, the Appeals Council issued an order on April 7, 2014, remanding the case for a new hearing. While the case was pending, Plaintiff filed new applications for DIB and SSI, which were both denied. The Appeals Council directed consolidation of those cases for consideration. On May 5, 2015, ALJ Ramona Scales issued a partially favorable decision, making the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset date.

3.     Since the alleged onset of disability, November 5, 2005, the claimant has the following severe impairments: history of dislocations of the left shoulder, degenerative joint disease of the right shoulder, degenerative disc disease, gunshot wound to the lower extremity and diabetes.

4.     Since the alleged onset of disability, November 5, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that prior to September 27, 2011, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant needed a sit/stand option that allowed him to alternate between sitting and standing for five minutes every hour, was able to lift five pounds with the left arm when the arm was fully extended, was unable to climb ladders, ropes or scaffolds or reach overhead with the left upper extremity, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl or reach in all other directions with the left upper extremity and all directions with the right upper extremity and needed to avoid concentrated exposure to extreme cold, vibration, wetness and humidity and all exposure to hazards such as unprotected heights and dangerous machinery.

6.      After careful consideration of the entire record, the undersigned finds that beginning on September 27, 2011, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as the claimant is able to lift and/or carry 10 pounds occasionally, sit for six hours in an eight hour workday and stand and/or walk for two hours in an eight hour workday, except: the claimant needs a sit/stand option that allows him to alternate between sitting and standing for five minutes every hour, is able to lift five pounds in the left arm when the arm is fully extended, is unable to climb ladders, ropes or scaffolds or reach overhead with the left upper extremity, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl or reach in all other directions with the left upper extremity and all directions with the right upper extremity and needs to avoid concentrated exposure to extreme cold, vibration, wetness and humidity and all exposure to hazards such as unprotected heights and dangerous machinery.

7.      Since November 5, 2005, the claimant has been unable to perform any past relevant work.

8.      Prior to the established disability onset date, the claimant was a younger individual age 18-49. Since the established disability onset date, the claimant's age category has changed to an individual closely approaching advanced age.

9.      The claimant has a limited education and is able to communicate in English.

10.     Prior to September 27, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on September 27, 2011, the claimant has not been able to transfer job skills to other occupations.

11.     Prior to September 27, 2011, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

12.     Beginning on September 27, 2011, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

13.     The claimant was not disabled prior to September 27, 2011, but became disabled on that date and has continued to be disabled through the date of this decision.

14.     The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2010, the date last insured.

(AR 760-71).

As a result of these findings, Plaintiff was entitled to only SSI beginning on September 27, 2011. The Appeals Council denied Plaintiff's request for review, leaving ALJ Scale's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000);

*Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not

disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and an award of benefits or, in the alternative, remand for further proceedings, arguing that the ALJ's pre-September 27, 2011 RFC assessment was improper, because the ALJ erred in weighing treating physician Dr. Chand's opinion, and because the ALJ improperly assessed Plaintiff's subjective complaints. Plaintiff does not contest the ALJ's finding that he was disabled as of September 27, 2011. The Court considers each argument in turn.

### A. Residual Functional Capacity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a); 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

1.      *Assessment of Light Work Prior to September 27, 2011*

Plaintiff contends that the ALJ erred in finding him limited to sedentary work as of September 27, 2011, arguing that the ALJ should have found him limited to sedentary work at some earlier date.

Plaintiff's treating physician, Thomas D. Magill, an orthopedic surgeon, wrote a post-examination letter on September 27, 2011, that opined: "It is unreasonable to expect he will be able to stand *more than* 6 hours in a day for work given the pathology he has." (AR 382) (emphasis added). The ALJ gave great weight to Dr. Magill's opinion but interpreted this statement as an opinion that "it was unreasonable to expect [Plaintiff] to be able to stand *for six hours* in a work

day." (AR 775) (emphasis added). Based in part on this opinion of Dr. Magill, the ALJ found that, prior to September 27, 2011, Plaintiff was capable of performing light work but that, as of that date, he was limited to sedentary work, which, per Grid Rule 201.10, rendered Plaintiff disabled as of September 27, 2011. Like the ALJ, Plaintiff asserts that Dr. Magill's September 27, 2011 opinion supports a finding of sedentary work by describing Dr. Magill as indicating "that it would be unreasonable to expect Plaintiff to stand *for 6 hours* in an 8-hour work day," (ECF 16, p.12) (emphasis added),[1] and that Plaintiff "could not stand and/or walk 6 hours in a day." (ECF 25).

The Court agrees with the Commissioner that Dr. Magill's September 27, 2011 opinion that Plaintiff could not stand *more than* six hours in a work day is consistent with the exertional limitations for light work, which is defined as requiring lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, *standing and walking for approximately six hours of an eight-hour work day*, stooping occasionally, and using arms and hands to grasp, hold, and turn objects while standing. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5-6 (1983). In contrast, sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting as well as walking and standing for no more than two hours of the work day. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, at *5. Plaintiff does not dispute the ALJ giving great weight to Dr. Magill's opinion. Therefore, contrary to Plaintiff's argument, Dr. Magill's September 27, 2011 opinion is direct support for the ALJ's finding that Plaintiff could perform light work until September 27, 2011.

---

[1] Plaintiff correctly quoted Dr. Magill's September 27, 2011 letter in the background of his opening memorandum. *See* (ECF 16, p. 6).

Plaintiff also argues that the ALJ improperly relied on the opinion of Dr. Hutson, the medical expert who testified at the hearing, to whose opinion the ALJ also gave great weight. In giving his opinion, Dr. Hutson relied, in part, on the October 2012 lumbar spine MRI, which demonstrated that Plaintiff's back impairment had worsened. The MRI impression was "[e]xtensive lumbar spondylosis worse at L4-L5 with disc bulge and a left paracentral and lateral focal disc protrusion producing bilateral foramina and lateral recess narrowing," "[f]oraminal narrowing and right lateral recess narrowing L5-S1, moderate bilateral foraminal narrowing and lateral recess narrowing at L3-L4," and "[l]eft foraminal narrowing in right lateral recess narrowing at L2-L3." (AR 1879). Dr. Hutson opined at the hearing that the October 2012 lumbar spine MRI placed Plaintiff at the sedentary level of work. (AR 812). When asked whether the sedentary level would be as of the date of the MRI or as of an earlier date, Dr. Hutson testified that "the MRI changes usually say that[sic] the year or two to make a change. So we could probably go back a year prior to the MRI." *Id*. In other words, Dr. Hutson opined that Plaintiff was limited to sedentary work beginning in October 2011, a year before the October 2012 MRI.

Plaintiff argues that Dr. Hutson gave no basis for choosing one year instead of two years, again contending that the ALJ should have found Plaintiff limited to sedentary work earlier than September 27, 2011. First, Plaintiff again argues that Dr. Magill's opinion provides that Plaintiff cannot do light work as of September 27, 2011, and does not indicate when the limitation arose previously. But, as noted above, this is a misstatement of Dr. Magill's September 27, 2011 opinion, which is consistent with light work. In fact, Plaintiff asserts that Dr. Magill's treatment notes do not show a deterioration up until September 27, 2011, with Plaintiff's complaints of hip pain consistent with the last two visits to Dr. Magill in May and June 2011. At those visits, Plaintiff reported pain

and problems in his left hip, radiating down his left leg. (AR 721 (6/29/2011), AR 722 (5/25/2011)). Examinations of his left hip and leg demonstrated 30 degrees internal rotation, 45 degrees external rotation with pain in his groin and thigh, and tenderness over his trochanteric bursa. Neurologically, straight leg raising was negative. (AR 722). On May 25, 2011, Dr. Magill noted that x-rays of Plaintiff's left hip demonstrate calcifications of the superior aspect of the trochanter, suggesting previous trauma, and moderate hip arthritis, with narrowing. *Id*. On September 27, 2011, Plaintiff continued to report pain in his left hip and he had pain with external range of motion over 30 degrees. (AR 743). Dr. Magill noted that x-rays taken at a different hospital in September 2011 were reviewed and demonstrated narrowing of the joint space suggestive of some degenerative changes and showed the bony changes of the superior aspect of the greater trochanter and hemipelvis. *Id*. In his brief, Plaintiff notes that he reported neither more pain or limitations in September 2011 than he did previously and that Dr. Magill did not note further restrictions or worsening of Plaintiff's impairments as of September 2011. Given that Dr. Magill's September 27, 2011 opinion is consistent with light work, the records from May 2011 through September 2011 do not support a restriction greater than for light work.

In addition, Dr. Magill's opinion in September 2011 that Plaintiff could not stand more than six hours in a day, consistent with the ability to perform light work, is consistent with Dr. Hutson's opinion that the limitation to sedentary work would go back in time approximately one year to October 2011, as opposed to two years. Although, the ALJ did not rely on Dr. Magill's opinion in giving great weight to Dr. Hutson's opinion, the consistency of Dr. Magill's opinion with that of Dr. Hutson nevertheless constitutes substantial evidence supporting the ALJ's decision to rely on Dr.

Hutson's opinion. It was not necessary for the ALJ to contact either Dr. Magill or Dr. Hutson to determine when the standing limitation of less than six hours a day began as argued by Plaintiff.

Second, Plaintiff argues that Dr. Hutson himself gave no reason to extend the limitation to sedentary work back only one year from the October 2012 MRI rather than back two years and did not identify any evidence to support this conclusion. Plaintiff argues that the September 11, 2009 MRI of Plaintiff's lumbar spine demonstrated mild degenerative changes at L5-S1, with an annular tear, and left-sided disc herniation at L2-3, at the lateral recess area, with some narrowing of the lateral recess. (AR 606). Plaintiff notes that there were then no other MRIs until the October 2012 MRI. To argue that he was more limited prior to October 2011, Plaintiff again notes the May through September 2011 treatment notes of Dr. Magill; but, as discussed above, those treatment notes show no change, and Dr. Magill's September 2011 opinion is consistent with the ability to do light work.

Plaintiff then points to the September 15, 2011 treatment notes of Dr. Chand. (ECF 16 (citing AR 1874)). However, the "complaint" in that treatment note provides that Plaintiff stated that he had greater pain in the left hip for one month. (AR 1874). Plaintiff is correct that Dr. Chand's examination revealed decreased lumbar and cervical spine range of motions as well as paresthesia and pain in Plaintiff's L3 dermatome and that Dr. Chand diagnosed radicular pain from the spine. (AR 1874). On October 3, 2011, Plaintiff again reported left hip and thigh pain to Dr. Chand. (AR 1872). Dr. Chand noted a lumbosacral strain and opined that the hip and thigh pain was originating with the lumbar spine and did not believe that the pain originated in the hip itself. Thus, by Plaintiff's own report to Dr. Chand, his hip pain had increased in the previous month. This, too, supports an onset of greater limitations in October 2011.

Finally, although Dr. Hutson did not give an explanation in his testimony for why he would extend the limitation to sedentary work back one year from the October 2012 MRI to October 2011, all of his testimony up to that point supports his finding. Until the October 2012 MRI was brought to his attention, Dr. Hutson had testified that the September 2011 x-ray of Plaintiff's hip showed early degenerative joint disease but that Plaintiff was otherwise neurologically intact. (AR 810). Dr. Hutson testified that, at that point in time, there was not a correlation between the examination findings of record and Plaintiff's complaints of pain. *Id.* Dr. Hutson's opinion is supported by the record, and Plaintiff has not identified any contrary evidence.

2.    *Lumbar Radiculopathy*

Plaintiff argues that, although the ALJ found that Plaintiff suffered from severe degenerative disc disease, the ALJ failed to account for Plaintiff's lumbar radiculopathy, which began in December 2008 after a positive electromyography/NCV study and continued through September 27, 2011. Plaintiff notes that the diagnosis was consistently confirmed by positive straight leg raise test and reduced sensation in his left leg. *See* (ECF 16, p. 18 (citing record pages)).[2] However, the ALJ considered and discussed many of the records that address lumbar radiculopathy. *See* (AR 534, 589-90, 762-63, 765, 767, 1417, 1798, 1800, 1820). The ALJ is not required to cite every page in the record that mentions lumbar radiculopathy. The ALJ noted Plaintiff's testimony that his lower back pain "goes down his left lower extremity" and evidence that Plaintiff reported left hip pain that radiated to his lower extremity. (AR 536, 762, 763). The ALJ also properly relied on the description of the September 2011 x-ray as mostly unremarkable except for evidence of an old injury, (AR 765, 1415), as well as the opinions of Dr. Magill and Dr. Hutson.

---

[2] Plaintiff discusses neurogenic claudication in his brief. However, he cites no reference in his medical record to neurogenic claudication or pseudoclaudication.

Plaintiff notes Dr. Hutson's hearing testimony that Plaintiff was "neurologically intact." (ECF 16, p. 19 (citing AR 810)). However, Dr. Hutson made that statement based only on the September 2009 MRI and before he was made aware of the October 2012 MRI by Plaintiff's counsel. (AR 811-12). It was only after he reviewed the October 2012 MRI that he acknowledged that Plaintiff's condition had worsened and that he would only be able to work "at the sedentary level." (AR 812). Thus, Plaintiff's argument that the medical expert on whom the ALJ relied did not consider lumbar radiculopathy is misplaced, and the ALJ's decision is supported by substantial evidence.

*3. Bending/Stooping*

Plaintiff notes that the medical evidence shows that he has limited range of motion in his lumbar spine. And that, where measurements were given, he had 0-40 degrees flexion on three occasions (2/12/2009, 8/6/2009, 11/25/2009), 50 degrees on one occasion (3/26/2010), and 60 degrees on one occasion (6/11/2009). Plaintiff argues that these physical examination findings are inconsistent with the ALJ's finding in the RFC that Plaintiff could occasionally stoop and asserts that remand is required because the ALJ did not resolve the inconsistency. (AR 762); *see Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). The Commissioner does not respond to this argument.

In finding Plaintiff able to stoop occasionally, the ALJ explicitly relied on the opinions of Dr. Hutson, who opined at the hearing that Plaintiff could stoop occasionally, and of consultative reviewing physicians Dr. Lavallo and Dr. Dobson in 2007 and Dr. Corcoran and Dr. Sands in 2011. (AR 440-47, 547, 766, 1717-24, 1758). However, it is not apparent whether these reviewing doctors considered the medical records containing the flexion measurements. *See Mueller v. Colvin*, 524 F.

14

App'x 282, 286 (7th Cir. 2013) (finding no conflict when the doctor who opined that the plaintiff could stoop occasionally relied on a different doctor's prior finding of an ability to bend forward only 50 degrees); *see also* (AR 1117 (Dr. Corcoran's report specifically citing the 11/2010 and 3/9/2011 examinations (AR 726, 1713- 15), which do not contain measurements of flexion)). Thus, the ALJ should have resolved this apparent inconsistency.

However, the error is harmless because none of the light exertion jobs identified by the vocational expert require stooping. *See* (AR 822) (vocational expert testimony). *See Lemke v. Berryhill*, 13-CV04482, 16-CV-819, 2017 WL 3169060, at *2 (W.D. Wis. July 26, 2017); *Jordan v. Astrue*, No. 1:08-CV-497, 2009 WL 3053715, at *15 (S.D. Ind. Sept. 18, 2009); *but see Benoit v. Colvin*, 2016 WL 1073050, at *4 (N.D. Ill Mar. 17, 2016); *see also Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (explaining harmless error exception to *Chenery* doctrine). In the Dictionary of Occupational Titles, the positions of marker, routing clerk, and mail clerk all list "not present" for stooping. *See* DICOT 209.587-034, 1991 WL 671802 (marker); DICOT 222.687.022, 1991 WL 672133 (routing clerk); DICOT 209.687-026, 1991 WL 671813 (mail clerk).

4.     *Range of Motion in Shoulders*

Records show that Plaintiff had limited range of motion in both shoulders, including flexion in his left shoulder measured between 120 and 160 and flexion in his right shoulder measuring 120. The ALJ concluded that Plaintiff could occasionally reach in all directions with his right arm and reach in all directions, except overhead, with his left arm. (AR 762). Plaintiff argues, as with the ability to stoop, that the ALJ's conclusion is inconsistent with the evidence and she did not resolve the inconsistencies. (ECF 16, p. 20 (citing AR 419, 568, 503, 576, 601)). The Commissioner does

not respond to this argument. Unlike with stooping, the ALJ's failure to resolve this inconsistency is not harmless.

The jobs of marker and mail clerk require *frequent* reaching, which is one-third to two-thirds of the day, as opposed to occasional which is up to one-third of the day. *See* DICOT 209.587-034, 1991 WL 671802 (marker); DICOT 209.687-026, 1991 WL 671813 (mail clerk). The job of routing clerk does not specifically address limitations such as reaching, but the job description includes that the person "places or stacks articles in bins designated according to route, driver, or type," which appears to require reaching. *See* DICOT 222.687.022, 1991 WL 672133 (routing clerk). Given the significance of Plaintiff's left shoulder impairment and limited range of motion in both shoulders, the ALJ limited Plaintiff to "occasionally" reaching in all directions, yet at least two and likely all three of the jobs identified by the vocational expert require "frequent reaching." Thus, the jobs available do not account for the RFC for occasional lifting, and remand is required on this basis. *See Parker*, 597 F.3d at 924.

*5.      Medications*

Plaintiff testified that his medications made him drowsy and that he napped during the day. (AR 794-95). Plaintiff argues that the ALJ failed to consider these reported side effects of medications and the effects on Plaintiff's ability to perform basic work related tasks or sustain full-time employment. Plaintiff testified that his medications made him drowsy; but he also testified that he did not tell his doctor about this side effect. (AR 795-96). Although this issue does not require remand on its own, the ALJ is directed on remand to discuss the issue of the side effects of Plaintiff's medication in the written decision.

6.      *Other Evidence*

Other evidence cited by the ALJ supports the limitation to light work until September 27, 2011. On November 10, 2010, Dr. Spotwood, a treating physician seeing Plaintiff regarding lab work related to his diabetes, noted Plaintiff's history of left shoulder dislocation and lumbar disc disease, but, on examination, Dr. Spotwood noted normal deep tendon reflexes, normal coordination, 5/5 muscle strength in all groups, and "gait and station examination reveals midposition without abnormalities." (AR 1577-78). The following month, a follow-up visit with Dr. Spotwood on December 7, 2010, showed an unremarkable physical examination, including that a "stability exam" was normal. (AR 1575-76). At both exams, Plaintiff was found not to be in any apparent distress. On September 23, 2011, just four days before the date the ALJ found Plaintiff to be limited to sedentary work, Plaintiff was again seen by Dr. Spotwood and reported lower back pain that radiated to his left hip. (AR 1798). On examination, Dr. Spotwood noted that Plaintiff walked with a mildly antalgic gait with a cane, had full muscle strength in all groups, had good coordination, and had tenderness to the left trochanteric region and left thigh. (AR 1800). All of these findings were noted by the ALJ. (AR 765).

## B. Treating Physician Opinion

Plaintiff contests the weight the ALJ gave to the opinion of treating physician Dr. Chand. Plaintiff does not disagree with the weight given to any other medical opinion evidence by the ALJ. In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. §§ 404.1527(b); 416.927(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). This includes the opinions of nonexamining sources such as state agency

medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id*. §§ 404.1527(e)(2); 416.927(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii), (iii); 416.927(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5); 416.927(c)(2)-(5).

On November 24, 2014, Dr. Chand completed a Physical Medical Source Statement form, opining that Plaintiff was limited to standing 10 minutes at one time and less than two hours total in an eight-hour work day and sitting thirty minutes at one time and less than two hours in an eight-hour work day. (AR 1418). He also opined that Plaintiff could walk only one block at a time with a cane or walker. (AR 1418). Dr. Chand wrote that Plaintiff needs to shift positions at will between sitting, standing, and walking. *Id*. He opined that Plaintiff could never stoop, had significant limitations with reaching, handling, or fingers, could occasionally use fingers for fine manipulation, could reach his arms in front of his body ten percent of the time, and could reach his arms overhead

18

five percent of the time. (AR 1419). Dr. Chand opined that Plaintiff's symptoms were expected to interfere with concentration and attention 25% of the day and limited Plaintiff to low-stress work. Dr. Chand indicated that Plaintiff would have good days and bad days and that Plaintiff's symptoms and treatment would cause him to miss work more than 4 days each month. Dr. Chand indicated that the earliest date that the description of symptoms and limitations in the questionnaire applies was October 16, 2008.

The ALJ gave this opinion "little weight" as unsupported by the record. (AR 767). The ALJ reasoned that the record indicates that the Plaintiff was not prescribed the use of a cane, that Plaintiff is able to walk with a mildly antalgic gait, and that the notes from the physical consultative examination indicate that Plaintiff had little difficulty engaging in postural activity, such as stooping, bending, and walking on his heels and toes and that he had full grip and dexterity. *Id*. The ALJ concluded that Dr. Chand's assessment is extreme and "suggests that [Plaintiff] would practically be bedridden during the day." *Id*. This analysis of Dr. Chand's November 2014 opinion is in the context of finding that prior to September 27, 2011, Plaintiff could perform light work with certain additional restrictions. Overall, as discussed in the RFC analysis above, significant contemporaneous evidence of record leading into September 2011 supports the ALJ's RFC determination, which is inconsistent with Dr. Chand's opinion given several years later in 2014. Moreover, the evidence of record supports a deterioration in Plaintiff's symptoms, and Dr. Chand's November 2014 opinion does not differentiate as to different limitations at different periods of time over the course of treating Plaintiff.

Plaintiff argues that the ALJ's analysis was legally insufficient and not supported by substantial evidence. First, Plaintiff notes that Dr. Chand prescribed Plaintiff a cane on June 21,

2011. (AR 1819). And, in the November 24, 2014 opinion, Dr. Chand checked the box that Plaintiff needed a cane or other hand-held device for standing/walking because of pain, weakness, and insecurity. (AR 1419). However, Dr. Chand prescribed the cane in June 2011 for "support" because of a sprained right ankle. *Id*. There is no other indication in the record that Dr. Chand prescribed a cane in relation to Plaintiff's hip or lower back pain prior to September 2011, nor does Plaintiff identify any treatment notes in which Dr. Chand endorses the continued use of the cane for other purposes or in which Plaintiff indicates that he is using a cane. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (affirming denial when the record contained only self reports of the use of a cane and the physician's observations that the claimant presented with an assistive device). Earlier in the decision, the ALJ noted Dr. Spotwood's physical finding in September 2011 that Plaintiff walked with a mildly antalgic gait with a cane, which was relevant to the date at which the ALJ found Plaintiff was limited to sedentary work. (AR 765 (citing (AR 1800)).

In relation to the ALJ's reference to Plaintiff's ability at the consultative examination to perform postural activities such as stooping, bending, and walking on heels and toes, Plaintiff notes that he had moderate difficulty standing on his left toes and heel and squatting and had severe difficulty standing on his left leg. (AR 417). The consultative examination Plaintiff references is dated June 6, 2007, and was performed by Dr. White. On examination, Dr. White noted no abnormalities in the right lower extremity. As for the left lower extremity, Dr. White noted range of motion of all joints as normal except for the hip and knee. (AR 416). In the lumbar spine, Dr.

White noted mild paraspinal tenderness and negative straight leg raising bilaterally. (AR 417). He noted muscle strength was 5/5 bilaterally in the upper and lower extremities. *Id*. On a chart, Dr. White checked "mild" difficulty with "tandem walking" and "moderate" difficulty with standing on toes and heels on the left side and squatting. *Id*. Plaintiff had no difficulty standing on toes or heels with the left leg. As for the fingering, handling, and reaching limitations assessed by Dr. Chand, in assessing Plaintiff's statement of symptoms, the ALJ cited specific evidence of record that "[n]otes from physical examinations longitudinally indicate that while the claimant had a limited range of motion of his left upper extremity, he retained full grip and dexterity of his bilateral upper extremities." (AR 765 (citing Ex. 2F, B3F, 8F, 10F, 12F, 18F)). This not an instance in which the ALJ considered only the evidence that supports her opinion while ignoring other statements in the same document that may be contradictory. Although the ALJ does not discuss these limitations in the paragraph discussing Dr. Chand's opinion, the ALJ discusses the evidence supporting her findings elsewhere in the decision.

Finally, Plaintiff takes issue with the ALJ's characterization of Dr. Chand's opinion as "extreme" and as suggesting "that [Plaintiff] would practically be bedridden during the day." Plaintiff argues that the limitations should not be discredited just because they are severe. But, the limitations imposed by Dr. Chand in 2014 are out of sync with Plaintiff's medical records in 2010 and 2011, the time during which the ALJ found Plaintiff capable of light work. The ALJ gave good reasons, based on the record, for giving little weight to Dr. Chand's opinion for the relevant time periods.

## C. Subjective Symptoms

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's decision in this case is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*,

580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff asserts that the ALJ found Plaintiff's reported symptoms and limitations "not entirely credible." (AR 762). The full statement from the ALJ provides: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to September 27, 2011, for the reasons explained in this decision." (AR 762). After discussing the medical and the consultative examiner's opinion from 2007, the ALJ again notes that, "[a]fter considering the claimant's allegations and complaints, the undersigned finds him to be less than fully credible before September 27, 2011." (AR 765). The ALJ then gives several reasons for this finding: not undergoing left shoulder surgery that had been scheduled; longitudinal notes from physical examinations indicating that although Plaintiff had limited range of motion in his left upper extremity, he retained full grip strength and dexterity in his bilateral upper extremities; Plaintiff's symptoms improved while on prescription medication and was consistently noted to have only mild tenderness of his back, shoulders, and hips after establishing treatment; Plaintiff achieved moderate progress in physical therapy; all of this suggests his symptoms were managed with conservative treatment; imaging studies of the left hip were unremarkable except for evidence of an old injury; and, although Plaintiff testified that he walks with a cane, he was not prescribed permanent use of an assistive device. *Id.*

Plaintiff first argues that the ALJ did not identify *which* of Plaintiff's statements were only partially credible, making review impossible. And, Plaintiff argues that it is unclear why Plaintiff was not entirely credible before September 27, 2011, but that his statements of symptoms were credible after that date. However, in support Plaintiff cites *Martinez v. Astrue*, 630 F.3d 693, 694-95 (7th Cir. 2011), in which the court noted that the ALJ's decision was "perfunctory" and that the ALJ discussed "so little of the evidence that her conclusion that [the claimant's] complaints of severe pain and fatigue 'are out of proportion to the objective physical findings' is suspended over air." *Id.* at 696. In contrast, in this case, the ALJ thoroughly discussed the medical and opinion evidence over five pages, beginning in 2006 through September 2011. (AR 762-767). Plaintiff also cites *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), which criticized the ALJ for using the now oft-cited boilerplate credibility language and for expecting to find objective evidence in support of the claimant's allegations of pain. As discussed in the previous sections of this Opinion, the ALJ's discussion of the evidence was thorough and accurate. And the ALJ's credibility determination assesses the severity of the limitations Plaintiff asserted were caused by his pain. The Court finds that the ALJ's credibility determination was not patently wrong.

Next, Plaintiff argues that the ALJ improperly relied on the fact that Plaintiff had been scheduled to have surgery on his left shoulder with Dr. Magill, an orthopedic surgeon, in October 2010 but then did not undergo the procedure. *See* (AR 765). Plaintiff notes that, although the surgery was recommended, Plaintiff did not undergo the procedure because his "medical insurance carrier would not pay for it." (ECF 16, p. 22). However, the evidence provides that Plaintiff reported that his insurance would not let him have the surgery in Laporte County—that it had to be performed in Lake County. (AR 1577). Thus, this is not an instance in which the ALJ drew inferences without

first understanding why the treatment did not occur. SSR 96-7p. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *McClesky v. Astrue*, 606 F.3d 351, 352 (7th Cir. 2010). Moreover, based on Plaintiff's left shoulder impairment, the ALJ limited Plaintiff to lifting only five pounds with the left arm when the arm was fully extended, to no reaching overhead with the left arm, and to occasional reaching in all other directions with the left upper extremity and in all directions with the right upper extremity. (AR 761-62). However, because the Court is remanding in relation to Plaintiff's ability to perform jobs involving reaching, the ALJ is directed to inquire about the reasons why Plaintiff did not have the surgery performed in 2010.

Third, Plaintiff argues that the ALJ failed to explain how evidence that Plaintiff had only mild tenderness in his back, shoulders, and hips undermined Plaintiff's reported symptoms or limitations as well as the objective evidence demonstrating significant limitations in Plaintiff's shoulders, back, left hip, and left leg and, thus, failed to build a logical bridge. *See* (AR 765). The ALJ's full statement is: "His symptoms reportedly improved while on prescription medication and he was consistently noted to have only mild tenderness of his back, shoulders and hips after establishing treatment." (AR 765). Thus, in the context of weighing the evidence supporting Plaintiff's statements of symptoms, the ALJ was noting the improvement with treatment. To the extent Plaintiff is arguing that the ALJ did not account for Plaintiff's limitations, those arguments are discussed in the context of the RFC above.

Fourth, the ALJ accurately noted that Plaintiff's left hip was unremarkable except for the old injury, despite reported pain, based on the September 2011 x-ray. (AR 765 (citing Ex. 18F/80)). Plaintiff argues that this is factually incorrect because the MRI of Plaintiff's left hip on September 11, 2009, demonstrates "minimal joint effusion" and "moderate increased signal along the lateral

margin of the greater trochanter of the left femur" that could be gluteal bursitis or tendinosis. (AR 605). The MRI impression also noted no fracture, dislocation, or any destructive process and that the rest of the pelvic bones, including the sacroiliac joints show no abnormality. *Id.* In her review of the medical evidence, the ALJ noted these 2009 MRI findings, but did not discuss the 2009 MRI findings in concert with the 2011 x-ray in assessing Plaintiff's subjective symptoms. Plaintiff argues that the ALJ was playing doctor because she cited no medical opinion that explained the significance of the testing. However, the ALJ specifically relied on the opinion of Dr. Magill, who also reviewed the x-ray and gave an opinion consistent with light work. (AR 382). Although it would have been more thorough for the ALJ to discuss both the MRI and the x-ray, reversal is not required on this basis. On remand, the ALJ is directed to consider both the 2009 MRI findings and the 2011 x-ray in assessing Plaintiff's subjective symptoms prior to September 27, 2011.

In the same argument, Plaintiff reasons that Dr. Hutson did not find Plaintiff's left hip unremarkable since he indicated that Plaintiff's hip impairment could be the reason Plaintiff needed a cane. (ECF 16, p. 24 (citing AR 810)).At the hearing, when asked about the hip, Dr. Hutson acknowledged the September 2011 x-ray, which he noted "showed a slight decrease in the joint space of the hip at that particular time, which means early degenerative joint disease." (AR 810). Dr. Hutson was then asked, "Is that significant in any way, or does the record show limitations as a result of the hip as we move forward in time?" *Id.* Dr. Hutson responded, "No more than I've already stated, Judge." *Id.* Then, the ALJ asked a partially inaudible question about the use of a cane: "Would the hip (INAUDIBLE) support the need for a cane?" *Id.* Dr. Hutson responded, "I guess yes, it could." *Id.* Then the ALJ asked, "But from a neurological perspective, the record doesn't suggest any limits there. Is that correct?" *Id.* Dr. Hutson responded, "That is correct, Judge."

*Id*. Thus, it is unclear what fact about Plaintiff's hip Dr. Huston agreed could support the need for a cane, but overall, his testimony is unequivocal that, in September 2011, there was no neurological basis for Plaintiff's alleged limitations. Again, it was not until he was made aware of the October 2012 MRI that Dr. Hutson opined that Plaintiff was limited to sedentary work as of approximately October 2011.

Fifth, Plaintiff contests the ALJ's reliance on records showing that Plaintiff's symptoms had improved with medication and physical therapy because the ALJ did not cite any evidence to support the statement . It is true that the ALJ did not cite the records in the paragraph assessing credibility; however, he had just cited them in his discussion of the medical evidence. *See* (AR 763-65; AR 464 (6/24/2009); 467-68 (4/8/2009); 403-04 (2/28/2007); 524 (1/22/2009); 601 (8/6/2009); 742 (5/28/2010)). More specifically, Plaintiff criticizes the ALJ for not comparing the objective evidence prior to treatment with objective evidence after treatment. But it is the treatment notes themselves, relied on by the ALJ, that report the improvement and pain control with medication. Plaintiff also argues that improvement alone does not undermine Plaintiff's reported limitations or a finding of disability. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."). The ALJ did not rely solely on Plaintiff's improvement but rather considered it as one of many factors.

Sixth, Plaintiff takes issue with the ALJ's finding that Plaintiff did not have a prescription for a cane, again noting that there was a prescription in the record. As the Court discussed above, Dr. Chand prescribed the cane in June 2011 for "support" because of a sprained right ankle. *Id*. There is no indication in the record that Dr. Chand prescribed a cane in relation to Plaintiff's hip or

lower back pain, nor does Plaintiff identify any treatment notes in which Dr. Chand endorses the continued use of the cane for other purposes or in which Plaintiff indicates that he is using a cane.

Finally, Plaintiff cites *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001), arguing that the ALJ did not consider the "pain factors" listed in that case, which include the nature and intensity of the pain, precipitating or aggravating factors, relieving factors, dosage and effectiveness of medications, treatment to relieve pain, opinions or observations of the claimant's physicians, functional restrictions, the claimant's past work record, and daily activities. Those factors in *Zurawski* are from a quote from *Luna v. Shalala*, 22 F.3d 687 (7th Cir. 1994), which in turn cites Social Security Ruling 88-13. Ruling 88-13 was superseded by Social Security Ruling 95-5p, which in turn was superseded by SSR 96-7p, which in turn was superseded by SSR 16-3p. *See* SSR 88-13, 1988 WL 236011 (July 20, 1988); SSR 95-5p, 1995 WL 670415 (Oct. 31, 1995); SSR 96-7p, 1996 WL 374186 (1996 WL 374186); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Notably, SSR 95-5p did not contain the "pain factors" listed in SSR 88-13 and neither does SSR 96-7p, the version in effect at the time of the ALJ's decision. As set forth at the outset of this section, SSR 96-7p governs the policy for assessing the credibility of an individual's statements, which includes statements about pain. There are no "pain factors" separate from the factors used to consider all of Plaintiff's subjective statements. Plaintiff does not identify evidence related to any factors, other than those set forth above, that the ALJ should have considered and that may have resulted in a different outcome.

### D. Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved

in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate for the ALJ.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 21st day of September, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT